**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Edward McLEROY,
Defendant-Appellant.**

**No. 78–5115.**

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1978.

Arthur Parker, Birmingham, Ala., for defendant-appellant.

J. R. Brooks, U. S. Atty., Melton L. Alexander, Ann C. Robertson, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before WISDOM, GODBOLD, and TJOFLAT, Circuit Judges.

WISDOM, Circuit Judge:

William Edward McLeroy appeals his conviction for possession of an unregistered sawed-off shotgun. We reverse.

On the morning of August 15, 1977, Captain Sosebee of the Birmingham Police De-

partment informed Sergeant Zales of the Department that he had received information that a black and white Chevrolet, 1977 Alabama license tag BMB 023, was parked at 1720 27th Street in Ensley, Alabama. Sosebee told Zales that, according to the information he had received, the Chevrolet was in the possession of McLeroy, had a damaged right side, was possibly a stolen vehicle, and might have been involved in a hit-and-run accident. In addition, Sosebee informed Zales that McLeroy might be carrying a sawed-off shotgun. Sosebee said that this information had come from John Cloud, an investigator with the Alabama Bureau of Investigation, who had learned it from an informant. Zales then telephoned Cloud, who confirmed the information related by Sosebee. Zales next obtained from police records McLeroy's picture and fingerprint card, which listed McLeroy's address as 1720 27th Street in Ensley. Zales also determined that Alabama license tag BMB 023 was registered to McLeroy.

Acting upon this information, Zales and Edwin Norris, another Birmingham police officer, drove an unmarked police car to McLeroy's address. They noticed that a 1968 Chevrolet matching the description provided by Cloud was parked nearby. The officers began surveillance at about 10:40 a. m. At about 11:55 a. m., they observed McLeroy leave the house, approach the Chevrolet, open the trunk and then close it, and walk back into the house. At about 12:05 p. m., the officers saw McLeroy, who was carrying a paper bag, leave the house, get into the Chevrolet, and drive away. The officers followed McLeroy, and, with the assistance of a marked police unit, they stopped the Chevrolet. Zales attempted to check the Vehicle Identification Number (VIN) of the Chevrolet, which was stamped on the dashboard. To Zales or any observer looking through the left front portion of the windshield the VIN, covered with opaque tape, was in plain view. He reached into the Chevrolet, removed the tape, and noted the VIN. The officers checked the VIN with the National Crime Information Computer, which reported that the Chevrolet had been stolen in 1973. They arrested McLeroy for buying, receiving, and concealing stolen property. During an inventory search of the vehicle, called for by standard police procedure, the officers discovered in the trunk a sawed-off shotgun with a barrel length of 13 inches.

A federal grand jury indicted McLeroy for violation of 26 U.S.C. § 5861(d), which prohibits unregistered possession of a shotgun having a barrel of less than 18 inches in length. The district court denied McLeroy's motion to suppress the shotgun as the fruit of an unconstitutional search. Then, in a bench trial, the court found McLeroy guilty of violating 26 U.S.C. § 5861(d).

On appeal, McLeroy challenges the constitutionality of the search of the Chevrolet. Upon reviewing the evidence, we conclude that the police did not comply with the Fourth Amendment when they made the investigatory stop of McLeroy. The shotgun discovered in the inventory search of McLeroy's vehicle therefore was the product of an unconstitutional stop and was inadmissible at trial. *Wong Sun v. United States*, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Elkins v. United States*, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; *United States v. Cruz*, 5 Cir. 1978, 581 F.2d 535 (en banc). This conclusion compels us to reverse McLeroy's conviction.

A police officer may make an investigatory stop of the driver of an automobile if the officer "reasonably . . . conclude[s] in light of his experience that criminal activity may be afoot". *Terry v. Ohio*, 1968, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889. *See Adams v. Williams*, 1972, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *United States v. Hall*, 5 Cir. 1977, 557 F.2d 1114, *cert. denied*, 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 194.[1] The

---

1. This is not a case in which the police discovered incriminating evidence while conducting random stops of motorists for license and registration checks. *Compare Delaware v. Prouse*, 1978, Del., 382 A.2d 1359, *cert. granted*, —— U.S. ——, 99 S.Ct. 76, 58 L.Ed.2d 107 (1978).

officer must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. In this case, none of McLeroy's *actions* observed by the police were suspicious. These observations, then, could not have created any reasonable suspicion that McLeroy was involved in criminal activity. The only information of criminality came from the informant's tip. We find that tip insufficient to create a reasonable suspicion of criminality.

The record contains nothing about the informant's identity or reliability. Nor does it shed any light on the informant's basis for asserting that the information contained in the tip was accurate. *Compare Aguilar v. Texas*, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Spinelli v. United States*, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Standing alone, then, the tip could not have created a reasonable suspicion of criminality: It "was so insubstantial that it could not properly have counted in the [reasonable suspicion] determination". *Spinelli*, 393 U.S. at 418, 89 S.Ct. at 590. The State points out that, by checking police records and observing McLeroy, the officers had corroborated certain portions of the tip—McLeroy's address and the location, description, and license number of the Chevrolet. This corroboration, the State argues, could have reasonably led the police to suspect that the information of criminality contained in the tip was accurate, even though they observed nothing suspicious.

█ In some cases, corroboration of innocent details might change an otherwise insubstantial tip into a proper basis for a reasonable suspicion of criminality. Indeed, some courts have held that corroboration of innocent details may allow such a tip to contribute to the *probable cause* necessary

to justify an arrest or search. *See United States v. Ashley*, 5 Cir. 1978, 569 F.2d 975; *United States v. Brennan*, 5 Cir. 1976, 538 F.2d 711, *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538; *Thompson v. White*, 5 Cir. 1968, 391 F.2d 724 (per curiam); *United States v. Garrett*, 9 Cir. 1977, 565 F.2d 1065, *cert. denied*, 435 U.S. 924, 98 S.Ct. 1487, 55 L.Ed.2d 517; 435 U.S. 974, 98 S.Ct. 1620, 56 L.Ed.2d 67; *United States v. Branch*, 4 Cir. 1977, 565 F.2d 274 (per curiam); *United States v. Spach*, 7 Cir. 1975, 518 F.2d 866; *United States v. Canieso*, 2 Cir. 1972, 470 F.2d 1224. *But cf. United States v. Larkin*, 9 Cir. 1974, 510 F.2d 13; *United States v. Bryant*, 1975, E.D.Mich., 406 F.Supp. 635. In this case, however, the only elements of the tip corroborated by the police investigation were the suspect's name and address and the description of his automobile. That information, of course, was readily available to many persons. That the informant knew these few corroborated facts in no way reasonably suggests that the informant could have known more personal facts about McLeroy, such as whether he was involved in crime.[2] In this case, the corroboration was so slight that it created no justification for believing that the informant was "relying on something more substantial than a casual rumor". *Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589. Reasonable suspicion requires more than this minimal corroboration of innocent details. *See United States v. DeVita*, 9 Cir. 1975, 526 F.2d 81 (per curiam).

REVERSED.

In this case, the chain of events leading to the discovery of the shotgun began with an investigatory stop of a person suspected of criminal activity.

2. Indeed, it has been asserted that "[i]nformants have a known propensity to fabricate allegations of criminal involvement and to bolster the charges by adding innocent details". *United States v. Larkin*, 9 Cir. 1974, 510 F.2d 13, 15 n. 2 (Hufstedler, J.) (citing Comment, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards*, 81 Yale L.J. 703, 712–14 (1972)).