**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Terrell ALDRIDGE,**
**Defendant-Appellant.**

**No. 83–7223**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 7, 1983.

J. Harry Blalock, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Shirley I. McCarty, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before FAY, VANCE and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant James Terrell Aldridge was indicted and convicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. (Appendix) § 1202(a)(1). Prior to trial, at a hearing on appellant's motion to suppress the weapon that was the subject of the indictment, police officer House testified that while on patrol at around three o'clock a.m. he received a radio call informing him of "suspicious persons in or around a construction site fooling with vehicles." The complainant claimed to be a tenant in one of the apartments adjacent to the construction site. The radio call described the suspect's vehicle as a large, white automobile, possibly a General Motors or Chrysler product, with a broken tail light. As Officer House proceeded down the road leading to the construction site, he passed a large, white automobile with a broken tail light going in the opposite direction within a mile of the site. House turned around, followed the vehicle and stopped it in a poorly lit area. With his gun drawn, he then ordered the driver to get out. The driver, appellant Aldridge, walked to the police officer's car while two other people remained in the car Aldridge had been driving. House put Aldridge in a "spread" position against the hood of the police car, frisked him and ordered him to stay there. He then approached the car Aldridge had been driving to determine what the other two passengers were doing and whether they posed a threat. House shined his flashlight through the window and noticed what looked like the handle of a pistol protruding from under the driver's seat. After ordering the remaining two passengers out of the car and searching them, he retrieved the exposed revolver, a loaded, .38 caliber Smith & Wesson.

Aldridge admitted the revolver was his, but claimed that it was wrapped in old rags and completely hidden in the springs under the driver's seat. Concluding that the revolver was in plain view, the trial judge denied Aldridge's motion to suppress the weapon, and appellant was subsequently convicted.

Appellant asserts four reasons why the seizure of the revolver violated his fourth amendment rights: (1) House had no reasonable suspicion to make an investigative stop; (2) in light of the information known to House at the time of the stop, his conduct (drawing his gun and ordering Aldridge out of the car) was unreasonable and constituted an arrest without probable cause; (3) House's frisk of Aldridge and subsequent search of appellant's automobile were unreasonable under the circumstances because House had no reason to suspect that appellant was dangerous; and (4) if the gun was not in plain view as House had testified, the search of appellant's automobile was invalid. Finding no merit in appellant's contentions, we affirm.

Aldridge first contends that Officer House possessed no reasonable suspicion to justify an investigative stop of his vehicle and that the evidence produced by the unlawful stop should therefore have been suppressed. He argues that the behavior observed by Officer House exhibited nothing suspicious and that the only evidence supporting the stop was House's corroboration of a vague description of the automobile transmitted over the police radio and supplied by an anonymous informer.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that some brief detentions by law enforcement officers do not rise to the level of an arrest and may be supported by less than probable cause. Such investiga-

tive stops require only reasonable suspicion. *United States v. Roper,* 702 F.2d 984, 985 (11th Cir.1983); *United States v. McLeroy,* 584 F.2d 746, 747 (5th Cir.1978).[1] To determine whether a stop is justified, the totality of the circumstances must be considered and the detaining officer must have a particularized and objective basis for suspecting the person of criminal activity. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Thompson,* 712 F.2d 1356 at 1359 (11th Cir.1983); *Roper,* 702 F.2d at 988.

■ The Supreme Court has rejected efforts to limit investigative stops to situations in which the officer has personally observed suspicious conduct. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). An investigative stop will be upheld if the officer observes facts corroborating even the innocent details of tips from informers. *Roper,* 702 F.2d at 989. This is true even when the informant is anonymous. *Id.; United States v. White,* 648 F.2d 29 (D.C.Cir.1981). House's detention of Aldridge's vehicle was proper based upon the facts known to him at the time. He received information over his police radio that suspicious persons were tampering with a vehicle at a construction site, and the suspect's automobile was described in some detail, including size, color, and a broken tail light. House immediately proceeded to the site and, within one mile of the con-

struction area, observed a vehicle fitting the description traveling in the opposite direction. His corroboration of the details of the informant's tip gave rise to a reasonable suspicion that criminal activity may be afoot. These facts were sufficient to justify the detention of Aldridge's vehicle.[2]

■ Aldridge next argues that Officer House's drawing his gun and ordering appellant out of the car was unreasonable and constituted an arrest without probable cause. He maintains that the crime of "fooling with vehicles" is not serious enough to warrant such action and that there was no indication of danger until the gun was discovered after he was detained. This argument is controlled by our decision in *Roper,* 702 F.2d at 987–88, in which we held that an investigative stop does not become an arrest merely because the detaining officer directs the subject out of a vehicle. *Id.* at 987. Nor does an officer's display of a weapon necessarily convert an investigative stop into an arrest. *Id. See also, United States v. Worthington,* 544 F.2d 1275 (5th Cir.1977); *United States v. Maslanka,* 501 F.2d 208 (5th Cir.1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975).

■ The use of a gun in connection with a stop is permissible when the officer reasonably believes it is necessary for his protection. *Roper,* 702 F.2d at 988; *United States v. Merritt,* 695 F.2d 1263, 1273 (10th

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit made prior to October 1, 1981.

2. Aldridge cites *United States v. McLeroy,* 584 F.2d 746 (5th Cir.1978), to support his position that reasonable suspicion cannot be based upon a tip from an informant of unknown reliability. In *McLeroy,* an anonymous informant told police that the defendant was in possession of a stolen automobile. The tip revealed only a description of the automobile, its license tag number, and its location in front of the defendant's house. Police verified that the defendant did live at the address given by the informant and that the license tag number was registered to the defendant. In light of the fact that this information was "readily available to

many persons," the court held that the corroboration was "so slight that it created no justification for believing that the informant was 'relying on something more substantial than a casual rumor.'" *Id.* at 748, *quoting Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The corroboration in this case is significantly more extensive than that in *McLeroy.* Aldridge's automobile was not seen in a location readily known to many persons. House observed it headed away from the scene of the reported criminal activity within ten minutes of receiving the radio call, less than one mile from the construction site and on the road leading to the site. These facts, combined with his corroboration of the vehicle's description, were sufficient to justify House's suspicion that the occupants of the vehicle may have been involved in criminal activity.

## 372

Cir.1982); *Worthington,* 544 F.2d at 1280 n. 3. House was alone in his patrol car at around three o'clock in the morning. He stopped a vehicle containing three adult males, suspecting that the occupants had been involved in criminal activity. Approaching Aldridge's vehicle with his gun drawn and ordering the driver out of the car were reasonable under the circumstances and did not constitute an arrest.

▮ Aldridge's third contention is that the frisk of his person and search of his car were unreasonable because the radio call did not mention weapons and Aldridge did not act suspiciously when he approached the police car as ordered. In *Terry v. Ohio,* the Supreme Court upheld a brief, pat-down frisk of a suspect in the absence of probable cause for arrest:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24, 88 S.Ct. at 1881. Having made a valid investigative stop of a vehicle containing three men in a poorly lit area in the middle of the night pursuant to a radio report that the suspects may have been involved in criminal activity, Officer House was entitled to take reasonable measures to neutralize the threat of physical harm. Investigative detentions involving suspects in vehicles are especially dangerous to police officers. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). House was justified in suspecting that the occupants of the automobile may have been armed and dangerous. We therefore hold that the officer's brief protective search of Aldridge for weapons did not violate his fourth amendment rights.

The validity of House's search of the automobile is controlled by *Michigan v. Long,* —— U.S. ——, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983), in which the Supreme Court recently held that a protective *Terry* search can extend to the passenger compartment of an automobile in the absence of probable cause to arrest. In balancing the legitimate governmental interest in crime prevention and detection, as well as the need for law enforcement officers to protect themselves, against an individual's cherished interest in personal security, the Court allowed the police to conduct "an area search of the passenger compartment to uncover weapons, as long as [the officers] possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.* 103 S.Ct. at 3481.

▮ The facts supporting House's reasonable suspicion for frisking Aldridge also justify his search of the passenger compartment of appellant's vehicle. The hour was late, he was acting alone in the investigation of three men, and he reasonably believed the suspects were involved in criminal activity. In addition, after House observed the handle of a revolver protruding from under the front seat, the necessity for a limited search of the car became readily apparent. The Court in *Long* rejected the defendant's contention that an automobile search is unnecessary when the suspect is already "in the control" of the officer, recognizing the possibility that a *Terry* suspect might break away from police control and retrieve a weapon from his automobile. *Id.* Moreover, the potential danger to Officer House under the circumstances in this case was compounded because two other suspects remained in appellant's car while House detained Aldridge. Their access to any weapons in the vehicle posed an immediate threat to the officer's safety. A search of the automobile on these facts was a reasonable course of action.

▮ Finally, Aldridge contends the gun was not in plain view as House had testified, but was wrapped in a old rag and hidden in the springs of the car seat. He argues that "if" he was correct, the court should have ruled the gun was not in plain view and therefore should have suppressed

it as the product of an invalid search. This argument involves a credibility choice. Absent clear error, the district court's credibility choices at suppression hearings are binding on this court. *United States v. Waksal,* 709 F.2d 653, 656 n. 4 (11th Cir.1983). Moreover, under the Supreme Court's holding in *Long,* justifying a limited search of a vehicle for weapons incident to a valid *Terry* stop, whether or not a weapon is in plain view is immaterial.

Finding appellant's claims to be without merit, we AFFIRM.