Charles **WARREN, et al., Plaintiffs,**

v.

**COFFEE COUNTY COMMISSION, et al., Defendants.**

**Civil Action No. 95–T–242–S.**

United States District Court, M.D. Alabama, Southern Division.

Aug. 9, 1995.

---

Debbie Lindsey Jared, Elba, AL, Paul A. Young, Jr., Enterprise, AL, for plaintiffs.

Bart Gregory Harmon, Daryl L. Masters, Webb & Eley, P.C., Montgomery, AL, for defendants.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiffs Charles Warren, Courtney Warren, Tremain Warren, Jo Ann Warren, and Natasha Warren bring this lawsuit against the Coffee County Commission, the Sheriff of Coffee County, and unknown officers and agents for events arising from a mistaken vehicle stop. The lawsuit was originally filed in the Circuit Court of Coffee County, Alabama, and was removed to this court by the defendants. The plaintiffs bring federal claims for illegal search and seizure and use of excessive force under the fourth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983 (West 1994).[1] The plaintiffs also bring various state law

---

1. The plaintiffs originally brought additional federal claims under 42 U.S.C.A. § 1985 (West 1994) and the fifth, eighth, and fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983 (West 1994). After reading the briefs, it was apparent to the court that the plaintiffs were only pursuing fourth amendment claims. Counsel for the plaintiffs agreed that all federal claims other than the fourth amendment claims could be dismissed. Letter of August 7, 1995. Because the question put to counsel was with regard to the federal claims only, the court does not read this letter to mean that the plaintiffs agree to dismiss their state law claims.

claims. Jurisdiction is proper under 28 U.S.C.A. § 1331 (West 1993). This lawsuit is now before the court on the defendants' motion for judgment on the pleadings or, in the alternative, motion for summary judgment. The court treats this motion, which supplants prior motions to dismiss, as a motion for summary judgment. For the reasons given below, the motion is granted as to the federal claims, and the remaining state law claims are remanded to state court.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how responsibilities on movant and nonmovant vary depending on who bears burden of proof at trial).

The defendants submitted a number of affidavits in support of summary judgment. In response, the plaintiffs submitted only one affidavit. The court cannot rely on the plaintiffs' assertions in their complaint and briefs for purposes of summary judgment. Accordingly, the court accepts the facts as stated in the defendants' affidavits except where contradicted or supplemented by the plaintiffs' affidavit, in which case, the court relies on the plaintiffs' affidavit. When there are contradictions or differences in the defendants' affidavits, the court uses the interpretation most favorable to the plaintiffs.

## II. BACKGROUND

On January 4, 1994, a radio transmission from the Enterprise, Alabama Police Department advised officers to be on the look out for a car involved in an armed robbery in Enterprise.[2] The car was described as a Pontiac Bonneville with three occupants.[3] The car was described as blue.[4] The three occupants of the car were described as a 30–year–old black male, a 17–year–old black male, and a 17–year–old black female.[5] Coffee County Sheriff Brice Paul stated in a subsequent radio broadcast that he had observed a vehicle that matched the description of the suspect vehicle identified by the Enterprise Police Department.[6] Although it is not in the record, it is undisputed that the vehicle Paul saw was a blue 1977 Buick.[7] Paul stated that the vehicle was heading away from Enterprise.[8]

When they saw the vehicle in question approaching, Coffee County Sheriff's Department officers Ben Moates, Rex Killingsworth, and Paul Goldsmith set up a road block with their patrol car and took positions with guns drawn.[9] Officer Myron Williams and Paul then arrived in separate cars from the other side. Williams told the occupants of the car to place their hands where they could be seen. Williams then had the driver exit with his hands in the air and walk backwards. Williams told the driver to stop, drop to his knees, and lie flat on the ground, at which point the driver was handcuffed. This procedure was repeated for two of the passengers.[10]

---

2. Moates Aff. ¶ 4; Williams Aff. ¶ 2.

3. Williams Aff. ¶ 2; Clark Aff. ¶ 7.

4. Williams Aff. ¶ 2.

5. Clark Aff. ¶ 7.

6. Paul Aff. ¶ 5; Moates Aff. ¶ 5; Williams Aff. ¶ 3; Killingsworth Aff. ¶ 4.

7. Pretrial order filed August 8, 1995 at 4.

8. Williams Aff. ¶ 3. The defendants allege that Paul also advised that he had confirmed the vehicle description and tag with Lieutenant Charlie Clark of the Enterprise Police Department. Paul Aff. ¶ 5; Moates Aff. ¶ 6; Williams Aff. ¶ 3; Killingsworth Aff. ¶ 4. The court cannot rely on this for purposes of summary judgment because Clark denies speaking with Paul. Clark Aff. ¶ 8.

9. Moates Aff. ¶ 9.

10. Williams Aff. ¶¶ 6–7.

After three of the car's occupants were handled in this manner, Elba Assistant Chief Maxwell Hooks arrived and stated that the occupants had not been involved in the robbery.[11] At this time, the occupants were released.[12] The record does not reveal how many occupants of the car there were, although it can be inferred that there were at least five.[13] No occupant was physically forced to leave the car or physically forced onto the roadway, nor was any occupant touched by an officer until handcuffing and searching began.[14] One occupant of the car stated that he had recently had surgery.[15] There is no evidence that he was handled improperly.

### III. FEDERAL CLAIMS

The plaintiffs charge the defendants with violating rights protected by the fourth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983. The court must address the plaintiffs' charges with respect to four different categories of defendants: the individual defendants involved in the stop in their individual capacities, the individual defendants not involved in the stop but potentially liable in their individual capacities as supervisors, both of these categories of individual defendants in their official capacities, and the Coffee County Commission.

### A. *Officers Involved in the Stop in Their Individual Capacities*

■ Officials in their individual capacities are protected by the doctrine of qualified immunity under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ A two-step analysis is followed to determine whether an official is entitled to qualified immunity. The defendant must first show that he or she was acting within the scope of discretionary authority at the time of the alleged conduct. Once this is shown, the plaintiff must prove that the official's conduct violated clearly established law. *E.g., Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992).

#### 1. *Scope of Discretionary Authority*

■ In order to show that actions were within the scope of discretionary authority, a defendant "must demonstrate objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir. July 30, 1981);[16] *accord Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994); *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988). There can be no question that the actions of the police officers meet this test.

#### 2. *Clearly Established Law*

■ The court now turns to the clearly established law prong of the qualified immunity test. This prong must be met not through references to general propositions, but through the specifics of concrete cases. *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149–50 (11th Cir.1994) (en banc). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-

---

11. Moates Aff. ¶ 12.

12. *Id.,* ¶ 13.

13. *See id.,* ¶¶ 11–12. The plaintiffs' amended brief in opposition to the motion to dismiss, filed on May 18, 1995, and the plaintiffs' second amended complaint, filed on May 18, 1995, declare that the occupants were two men, two women, and one child.

14. Williams Aff. ¶ 8; Moates Aff. ¶¶ 14–15; Paul Aff. ¶ 10; Killingsworth Aff. ¶ 9.

15. Moates Aff. ¶ 16.

16. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Id.* at 1150. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Id.* at 1149. Thus, "qualified immunity for government officials is the rule, liability and trials for liability the exception." *Alexander v. University of North Florida,* 39 F.3d 290, 291 (11th Cir. 1994) (per curiam). "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter,* 28 F.3d at 1149.

### a. Fourth Amendment Search and Seizure Claim

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking."[17] *United States v. Williams,* 876 F.2d 1521, 1523 (11th Cir.1989). "The *Terry* rationale allows police to stop a moving car based on a reasonable suspicion that its occupants are violating the law." *United States v. Diaz–Lizaraza,* 981 F.2d 1216, 1220 (11th Cir.1993). "Reasonable suspicion is determined from the totality of the circumstances and from the collective knowledge of the officers involved in the stop." *Williams,* 876 F.2d at 1524 (citations omitted). Reasonable suspicion is more than a hunch; there must be some minimal, objective justification.

*Diaz–Lizaraza,* 981 F.2d at 1220–21; *Williams,* 876 F.2d at 1524.

The plaintiffs have pointed to no cases that clearly establish that the seizure at issue was illegal. In its own search, the court has found no such cases. Certainly, when a suspect's automobile is described in detail and a matching vehicle is seen traveling away from the site of suspicious activity, a reasonable suspicion exists. *United States v. Aldridge,* 719 F.2d 368, 371 (11th Cir. 1983). On the other hand, an officer who "simply stopped two black males because they were in a black Chevrolet" when he only knew that two black males in a black or blue Chevrolet were suspected in a series of robberies the last of which had occurred at least two weeks earlier does not have a reasonable suspicion. *United States v. Rias,* 524 F.2d 118, 121 (5th Cir.1975). Although the facts of this case lack a detailed description like that in *Aldridge,* the stop of the plaintiffs' car was based on more than that present in *Rias.* Paul saw a blue car traveling away from the direction of a crime shortly after hearing a broadcast telling officers to be on the look out for a blue car. Although the car had a different number of occupants than the car described on the radio, the suspects could have picked up others.[18] The law is not clearly established as to whether the officers had a reasonable suspicion based on what Paul saw.[19]

To the extent the plaintiffs claim that there was an illegal search of their persons, they have pointed to no cases that clearly establish that any searches were illegal. In fact, when officers suspect occupants of an automobile are armed, they are entitled

---

**17.** The plaintiffs have conceded that the analysis under *Terry* is applicable rather than a more stringent analysis required for an arrest. Plaintiffs' amended brief in opposition to the motion to dismiss, filed on May 18, 1995. Therefore, the court need not engage in an analysis of the nature of the encounter between the police and the plaintiffs. *Cf. Courson v. McMillian,* 939 F.2d 1479, 1492 (11th Cir.1991) (examining whether encounter was seizure or arrest).

**18.** The record does not disclose a description of the occupants of the car.

**19.** The court does not here determine that there was reasonable suspicion such that any evidence

obtained would not be suppressed in a criminal case. Rather, the court determines that the law has not been clearly established on this point. With regard to probable cause in the qualified immunity context, the question is not whether there was actual probable cause, but whether officers could have believed there was probable cause. *E.g., Pickens v. Hollowell,* 59 F.3d 1203, 1206 (11th Cir.1995). Similarly, here the question is not whether there was a reasonable suspicion, but whether the officers could have believed there was a reasonable suspicion—in other words, whether the law was clearly established.

to engage in a brief protective search. *Aldridge,* 719 F.2d at 372. The broadcast stated that there had been an armed robbery, thereby supporting the belief of the officers that the plaintiffs were armed. The plaintiffs have submitted no evidence to suggest that any search was unreasonable.

For these reasons qualified immunity is appropriate on the search and seizure claim.

### b. *Fourth Amendment Excessive Force Claim*

It is unquestionable that "police use of excessive force is a constitutional violation." *McKinney v. DeKalb County,* 997 F.2d 1440, 1443 (11th Cir.1993). Because the plaintiffs' claim is for use of excessive force during a "seizure," the claim should be analyzed under the fourth amendment rather than the fourteenth amendment substantive due process clause. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

■ The only arguable bases for the excessive force claim are that the officers drew their guns and that some of the plaintiffs were told to lie on the ground and were handcuffed and searched. The plaintiffs have supplied no cases that clearly establish that the police used excessive force with regard to these bases.

The Eleventh Circuit Court of Appeals has "dispelled any contention that officers' drawing guns on stopped vehicle occupants is limited to situations when suspects reportedly are armed or seek to evade detention." *Courson v. McMillian,* 939 F.2d 1479, 1494 (11th Cir.1991). Rather, the question is whether the officers reasonably believe the guns are necessary for protection. *Id.* Here, the suspects were reportedly armed. This is enough to preclude the finding that it is clearly established that an officer could not reasonably believe guns were necessary for protection.

Similarly, the court has found no cases clearly establishing that using handcuffs, requiring that suspects lie on the ground, or conducting a search constitute excessive force when suspects are believed to be armed. In fact, even when an officer has no report that suspects are armed, requiring a

suspect to lie on the ground is not necessarily inappropriate. *Id.* at 1495–96. Qualified immunity is appropriate on the excessive force claim.

### B. *Supervisors Potentially Liable in Their Individual Capacities*

■ It appears that the plaintiffs are suing some of the defendants in their individual capacities for failure to instruct, supervise, train, control, or discipline adequately. Respondeat superior cannot serve to hold supervisors liable for the acts of employees. *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir.1990). Nevertheless, a supervisor may be held liable "due to the existence of an improper policy or from the absence of a policy." *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991). The plaintiffs have presented no evidence from which the court could find the defendant supervisors liable under federal law.

### C. *Official–Capacity Immunity and Coffee County Commission*

■ The Supreme Court has held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [of which the official is an agent]." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Therefore, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991).

It appears that officers in sheriffs' departments are state officials who are immune from damages under the eleventh amendment to the United States Constitution. *Carr v. City of Florence,* 916 F.2d 1521, 1526–27 (11th Cir.1990). To the extent that officers in sheriffs' departments are county officials, the official-capacity claims can be treated together with the claim against the Coffee County Commission.

■ A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). In order to rise to the level of a custom, a practice must be "longstanding and widespread." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991). There is no such evidence in this case.

The court now turns to the policy question. A policy is not "limited to decisions made by the city's official legislative body." *Id.* at 1480. Rather, "a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Id.* State law governs whether an official has final policymaking authority. *Id.* The court must "examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law." *Mandel v. Doe,* 888 F.2d 783, 793 (11th Cir.1989). The plaintiffs assert that Sheriff Paul has final policymaking authority. A sheriff, however, is not the final repository of a county's general law enforcement authority because counties have no law enforcement authority. *Swint v. City of Wadley,* 5 F.3d 1435, 1450–51 (11th Cir. 1993), *modified,* 11 F.3d 1030 (11th Cir.1994), *vacated on jurisdictional grounds,* —— U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). Accordingly, the policy claim cannot survive.

The individual defendants are entitled to official-capacity immunity and the Coffee County Commission cannot be held liable.

## IV. STATE LAW CLAIMS

There are no federal claims remaining. The court declines to exercise supplemental jurisdiction over the state law claims under 28 U.S.C.A. § 1367(c)(3) (West 1993). *See L.S.T., Inc. v. Crow,* 49 F.3d 679, 685 (11th Cir.1995) (per curiam).

## V. CONCLUSION

In conclusion, the court should not be understood to condone what happened to the plaintiffs—indeed what happened was unfortunate to say the least. However, the law allows officers leeway to make mistakes and the court is bound to follow the law. For the reasons stated above, the defendants are entitled to summary judgment on the federal claims and the remaining state law claims will be remanded to state court.

An appropriate judgment will be entered.