[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11972
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00153-CR-WS-C-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMISON LADON PACKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 23, 2010)

Before BLACK, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Jamison Ladon Packer appeals his conviction on two counts of possession of

controlled substances with intent to distribute, imposed following the district

court's denial of his motion to suppress evidence seized from his person and car after the police stopped him for a broken taillight and subsequently discovered an open beer can. On appeal, Packer argues that: (1) the district court erred in finding that the stop was not unconstitutionally prolonged, because the arresting officer used the traffic stop as a "fishing expedition" to confirm a hunch that he had drugs, and failed to act promptly to confirm or deny the otherwise reasonable suspicion that the open beer can actually contained alcohol; and (2) the district court erred in finding that the arresting officer had reasonable suspicion to search Packer for weapons, because the government failed to present any particularized evidence that implied that he possessed a weapon or otherwise engaged in unusual conduct. After thorough review, we affirm.

We review a district court's denial of a motion to suppress as a mixed question of law and fact. United States v. Ponce-Aldona, 579 F.3d 1218, 1221 (11th Cir. 2009), cert. denied, (U.S. Jan. 11, 2010) (No. 09-7671). Thus, we review the district court's findings of fact for clear error, and the district court's application of law to those facts de novo. Id. We construe all facts in the light most favorable to the prevailing party, which, here, is the government. Id.

First, we are unpersuaded by Packer's argument that the arresting officer unconstitutionally prolonged his traffic stop. "A traffic stop . . . is a seizure within

2

the meaning of the Fourth Amendment." United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (quotation omitted). A decision to stop a vehicle is reasonable under the Fourth Amendment when an officer has either probable cause or reasonable suspicion to believe that a traffic violation occurred. Id.

A traffic stop must last "no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification." United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999) (quotations and alteration omitted). "Ordinarily, when a citation or warning has been issued and all record checks have been completed and come back clean, the legitimate investigative purpose of the traffic stop is fulfilled." United States v. Simms, 385 F.3d 1347, 1353 (11th Cir. 2004); see also United States v. Holloman, 113 F.3d 192, 196 (11th Cir. 1997) (noting that a police stop cannot last "any longer than necessary to process the traffic violation").

Police questioning -- even if such questioning is about a topic unrelated to the initial purpose of the search -- is permitted so long as the questioning "does not prolong the time reasonably required to complete that initial mission." United States v. Hernandez, 418 F.3d 1206, 1209 n.3 (11th Cir. 2005) (quotation and brackets omitted). An officer's prolonging of a traffic stop beyond its initial purpose is only reasonable in the limited circumstances where there is "an

3

objectively reasonable and articulable suspicion illegal activity has occurred or is occurring," or if the driver consents. Pruitt, 174 F.3d at 1220. Reasonable, articulable suspicion must be drawn from specific facts, and rational inferences therefrom, measured under the totality of the circumstances and in light of the officer's knowledge. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990).

Here, the arresting officer had probable cause to investigate a suspected traffic infraction, and reasonable suspicion to investigate a suspected open container violation. As the record shows, the officer initially stopped Packer for a traffic infraction, then asked Packer for his license, observed the open beer can, ran Packer's license, and returned and inquired about contraband. Thus, at the time the officer observed the beer can, he had a legal basis to conduct two investigations. The first was into the original traffic infractions, for which he had probable cause. Spoerke, 568 F.3d at 1248. The second was into a possible open container violation, for which he had reasonable suspicion upon seeing the open beer can. Tapia, 912 F.2d at 1370. After lawfully running Packer's license while investigating the traffic infraction, Simms, 385 F.3d at 1353, the officer commenced his investigation of the open container violation. As part of his

4

investigation into the open container, the officer asked whether Packer possessed alcohol, along with other contraband.  Hernandez, 418 F.3d at 1209 n.3.

Packer cites no authority that governs the order in which a police officer must address multiple issues for which he has a lawful basis to investigate. Moreover, nothing in the record suggests that any aspect of the officer's investigation was unrelated to the purposes of the stop.  Therefore, Packer's initial lawful stop for a traffic violation was not prolonged by the officer's decision to first run Packer's license before questioning him based on a reasonable suspicion that he committed an open container violation. Pruitt, 174 F.3d at 1220.

We likewise reject Packer's claim that the district court erred in finding that the arresting officer had reasonable suspicion to search Packer.  Law enforcement officers may briefly detain a suspect and search the suspect's person for weapons when the officers have reasonable suspicion (1) that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the suspect may be an armed and dangerous individual. Terry v. Ohio, 392 U.S. 1, 30 (1968).  The stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20.

To determine whether the police had reasonable suspicion to make a stop, a court must look at the totality of the circumstances.  United States v. Bautista-

5

Silva, 567 F.3d 1266, 1272 (11th Cir. 2009). The burden of proof for reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence," and less than probable cause; nevertheless, the officer must articulate "some minimal level of objective justification" for making a stop. United States v. Sokolow, 490 U.S. 1, 7 (1989).

"Great deference is given to the judgment of trained law enforcement officers 'on the scene.'" United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003). A person's presence in a high-crime area is relevant to the reasonable suspicion inquiry, although it is insufficient, standing alone, to establish reasonable suspicion. United States v. Lopez-Garcia, 565 F.3d 1306, 1314 (11th Cir.), cert. denied, 130 S.Ct. 1012 (2009). In evaluating whether a suspect is armed and dangerous, the issue is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Hunter, 291 F.3d 1302, 1307 (11th Cir. 2002) (quotation omitted).

Regarding searches that arise out of traffic stops, the Supreme Court has recognized that officer safety is a "legitimate and weighty" concern, and observed an "inordinate risk confronting an officer as he approaches a person seated in an automobile." Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977).

6

In 2009, the Supreme Court held in a unanimous opinion that to justify a pat down of the driver or a passenger during a traffic stop, "just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 129 S.Ct. 781, 784 (2009). In that case, police were in an area known for gang activity, and stopped a car for a traffic infraction. Id. At the time of the stop, none of the officers had reason to suspect anyone in the car of criminal activity. Id. One of the passengers struck an officer as suspicious, because his appearance and conduct indicated gang membership. Id. at 785. After answering the officer's questions, the officer instructed the passenger to get out of the car, and frisked him for officer safety. Id. The Arizona Court of Appeals held that the officer had no right to pat the passenger down, even if she suspected the passenger to be armed and dangerous. Id. The Supreme Court reversed, holding that an officer's conclusion that a passenger is armed and dangerous justifies a Terry search. Id. at 788. It did not decide, however, whether the police had reasonable suspicion that the passenger was armed and dangerous under the circumstances of that case, instead leaving the issue for remand. Id. at 788 n.2.

Nonetheless, we have long held that a lone officer who stopped three men in a car at night based on a radio report that they were involved in criminal activity

7

specifically provided the arresting officer with reasonable suspicion that the occupants "may have been armed and dangerous." United States v. Aldridge, 719 F.2d 368, 372 (11th Cir. 1983). Moreover, as a general matter, we have held that the totality of the circumstances provided reasonable suspicion to conduct a Terry search of one or more of a car's occupants on multiple occasions. See United States v. Pantoja-Soto, 768 F.2d 1235, 1237 (11th Cir. 1985) (bulge under driver's shirt at the waist); United States v. Knight, 562 F.3d 1314, 1327 (11th Cir.), cert. denied, 130 S.Ct. 192 (2009) (officer's smell of marijuana and alcohol and the driver's arguing with the officer at the beginning of the stop).

In the instant case, the district court determined that Packer's presence in an area known for high drug trafficking, as well as the officer's observation of him engaging in a suspected drug transaction, justified a search for officer safety. Although the district court did not address whether, consistent with the Supreme Court's decision in Johnson, the arresting officer possessed reasonable suspicion that Packer was armed and dangerous, we hold that under the facts of this case, the search of Packer's person for safety reasons was justified as a matter of law. See United States v. Al-Arian, 514 F.3d 1184, 1189 (11th Cir. 2008) (holding that we may affirm if the totality of the facts in the record would support doing so).

We recognize that like the suspect in <u>Johnson</u>, Packer was stopped for a traffic infraction. 129 S. Ct. at 784. However, the record also shows that, at the time that the officer decided to search Packer for weapons, he knew that (1) he stopped Packer at night, in a neighborhood known for high drug trafficking; (2) he observed Packer's car engaged in what appeared, in his experience, to be a drug transaction; (3) he received a tip from an informant that drugs were coming into the area; (4) Packer got out of the car and approached him, which led him to believe that Packer did not want him to look in the car; (5) he observed an open beer can within reach of the driver's seat; (6) Packer denied having any contraband, including alcohol, despite the open beer can in plain view; and (7) based on his experience, people who trafficked in drugs also carried weapons. Therefore, unlike the defendant in <u>Johnson</u>, the police had reason to suspect Packer of criminal activity at the time of the stop. <u>See</u> <u>id.</u> Further, the officer's inference that his safety may be at issue, based on his training and derived from his on-the-scene observations, was entitled to significant weight. <u>Chanthasouxat</u>, 342 F.3d at 1276. Accordingly, under our case law, the facts of this case provided the officer with reasonable suspicion that Packer was armed and dangerous. <u>See</u> <u>Aldridge</u>, 562 F.2d at 372.

**AFFIRMED.**

9