[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13095

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHARLES COLEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20135-DPG-1

_____

Before ROSENBAUM, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Charles Coleman was indicted on one count of possession of a firearm and ammunition by a convicted felon, *see* 18 U.S.C. § 922(g)(1), after a gun was found in the center console of his car during a traffic stop. Coleman moved to suppress the evidence, arguing that neither probable cause nor reasonable suspicion supported the warrantless search of his car. Following an evidentiary hearing, the district court denied the motion to suppress, and a jury later found Coleman guilty at trial. Coleman appeals the denial of his motion to suppress. He also raises, for the first time on appeal, arguments that the indictment was defective and that § 922(g)(1) is unconstitutional as applied to convicted felons. After careful review, we affirm.

## I.

At around 4:00 a.m. on November 30, 2020, two City of Miami Police Department Officers on patrol together in separate vehicles saw a black Chevrolet Impala that Coleman was driving, run a red light in the Little Havana neighborhood. The officers, Pedro Moreno and David Torres, activated their overhead lights and pulled the car over.

When the Impala came to a stop, both officers observed Coleman turning his upper body to the right and moving his arms and shoulders, as if he was "fiddling" or "fidgeting" with the center console. Officer Moreno approached the driver's side door with his

gun drawn and ordered Coleman to put his hands up and step out of the car. Coleman complied, and Officer Torres detained him at the rear of the Impala.

While Officer Moreno was standing near the driver's side door, he observed with the aid of a flashlight that the center console was "partially open" and was being prevented from closing by "what appeared to be the back strap of a firearm." Moreno reached inside the car and retrieved a firearm from the console. Coleman was not in handcuffs at this time. The officers secured the firearm and after making additional inquiries, learned that Coleman was a convicted felon, at which point they placed him under arrest.

## II.

In March 2021, a federal grand jury returned an indictment charging Coleman with one count of possession of a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The indictment alleged that, on November 30, 2020, Coleman "knowingly possessed a firearm and ammunition . . . , knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year."

Coleman filed a motion to suppress the evidence, and the district court held an evidentiary hearing in May 2022. After hearing the officers' testimony and viewing body-worn camera video of the incident, the court denied the motion to suppress. The court found that the officers testified credibly and consistently with each other and the body-worn camera video. And the court concluded that probable cause existed for the traffic stop and that reasonable

suspicion supported conducting a protective search of the center console for weapons.

Coleman proceeded to a jury trial in June 2022. Among other evidence presented, the parties stipulated that Coleman "knew that prior to November 30, 2020, he had been convicted of a felony offen[s]e, which is a crime punishable by imprisonment for more than one year." The court also instructed the jury that one of the elements they must find beyond a reasonable doubt was that "at the time the defendant possessed the firearm or ammunition, the defendant knew he had previously been convicted of a felony." The jury returned a guilty verdict.[1] Coleman appeals.

### III.

We start with the denial of the motion to suppress. We review the district court's findings of fact for clear error and its application of law to the facts *de novo*. *United States v. Johnson*, 921 F.3d 991, 997 (11th Cir. 2019) (*en banc*). "We view the evidence in the light most favorable to the government, as the party that prevailed in the district court." *Id.* (quotation marks omitted).

Under *Terry v. Ohio*, 392 U.S. 1 (1968), "[w]hen an officer reasonably believes that a suspect threatens his safety or the safety of others, he may search the suspect and seize concealed objects that he reasonably believes may be weapons or other instruments of assault." *Johnson*, 921 F.3d at 997. The "sole justification" for such a

---

[1] Based on a jury note during deliberations, Coleman filed a motion to reconsider the denial of his motion to suppress, which the district court denied.

22-13095                Opinion of the Court                5

search "is the protection of the police officer and others nearby," so it must "be confined in scope to an intrusion reasonably designed to discover" weapons. *Terry*, 392 U.S. at 29.

In *Michigan v. Long*, 463 U.S. 1032 (1983), "the Supreme Court held that a protective *Terry* search can extend to the passenger compartment of an automobile in the absence of probable cause to arrest." *United States v. Aldridge*, 719 F.2d 368, 372 (11th Cir. 1983). The Court reasoned "that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long*, 463 U.S. at 1049. These interests, according to the Court, compelled the conclusion that officers may search a vehicle's passenger compartment for weapons, so long as they have reasonable suspicion that the suspect is dangerous and might access the vehicle to gain immediate control of weapons. *Id.* at 1048–51; *See Arizona v. Gant*, 556 U.S. 332, 346 (2009) ("[*Long*] permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion than an individual . . . is dangerous and might access the vehicle to gain immediate control of weapons.").

This case is controlled by *Long*, though any reference to that case is conspicuously absent from Coleman's briefing.[2]  Coleman

---

[2] Coleman's briefing instead concerns the "protective sweep" doctrine, a related but distinct doctrine extending *Terry* to permit a cursory inspection of a residence upon reasonable suspicion "that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 333–35 (1990).  Of course, as Coleman notes, "It is highly unlikely

does not dispute that the traffic stop was supported by probable cause. And the circumstances facing the officers provided reasonable suspicion that Coleman was armed and dangerous.

As the district court found, both officers credibly testified that they could see into Coleman's vehicle when it came to a stop, and that they saw him "fidgeting in the vehicle" and "mov[ing] his torso toward the center console." Based on their training and experience, as well as common sense, the officers could reasonably believe that Coleman was attempting to conceal or retrieve something from the center console. Consistent with that suspicion, when Officer Moreno reached the driver's side door and ordered Coleman out of the vehicle, he could see the center console propped open by a black object, which he suspected to be a firearm. Moreno then lifted the lid to the console—an area where a weapon could be placed or hidden and easily accessed by the driver—and recovered a firearm from inside. *See Long*, 463 U.S. at 1049–50.

Given the "especially hazardous" nature of roadside encounters between police and suspects, the officers' observations at the scene were sufficient to justify an "articulable and objectively reasonable belief that the suspect is potentially dangerous." *Long*, 463 U.S. at 1051. That Coleman may have been effectively under the officers' control during the stop—detained by Officer Torres near the rear of the vehicle, but not in handcuffs or under arrest—does not eliminate the danger to officer safety. *See id.* at 1051–52.

that another individual would be found hiding in the vehicle's console." But that's not the inquiry here, as *Long* makes clear.

Rejecting this same argument, the Supreme Court in *Long* explained that a *Terry* suspect may "break away from police control and retrieve a weapon from his automobile," or he may regain "access to weapons" if permitted to return to his vehicle when the stop ends. *Id.* at 1052; *see Johnson*, 921 F.3d at 1001 ("[S]uspects have been known to reach for weapons even when handcuffed."). So the Supreme Court has "not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Long*, 463 U.S. at 1052. Accordingly, the district court did not err in denying the motion to suppress.

## IV.

Next, Coleman contends for the first time on appeal that his indictment was jurisdictionally defective and failed to provide fair notice because it did not allege that he knew his status as a felon, also known as the "knowledge-of-status" element. *See Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 2194 (2019) ("To convict a defendant, the [g]overnment . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [as a felon] when he possessed it.").

For starters, as Coleman acknowledges, our precedent forecloses his jurisdictional argument. *United States v. Moore*, 954 F.3d 1322, 1336 (11th Cir. 2020) (holding that the omission of the knowledge-of-status element in an indictment "does not deprive the district court of subject matter jurisdiction"). That's so even though the indictment failed to reference § 924(a)(2), which sets out the penalties for a § 922(g) violation. *United States v. Leonard*, 4

F.4th 1134, 1143 (11th Cir. 2021) (stating that, "because the text of § 922(g) implies a knowledge-of-status element, an indictment that alleges violations of § 922(g) confers subject matter jurisdiction," notwithstanding the failure to reference § 924(a)(2)).

More fundamentally, Coleman's challenge fails because the indictment included *Rehaif*'s knowledge-of-status element.  The indictment expressly alleged that Coleman knowingly possessed the firearm "*knowing* that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year."  He later stipulated to that same fact at trial, and the jury was charged on the knowledge-of-status element.  In other words, the indictment alleged, and the jury found, that Coleman knew he was a felon when he possessed the gun.

Coleman responds that, in his view, the government was required to go further and both allege and prove he knew that his felon status prohibited him from lawfully possessing a gun.  But *Rehaif* itself does not support that claim.  *See Rehaif*, 139 S. Ct. at 2198 (explaining that a defendant's ignorance of "the existence of a statute proscribing his conduct" is no excuse).  Nor is it consistent with our precedent applying *Rehaif*.  *See, e.g.*, *United States v. Coats*, 8 F.4th 1228, 1234–35 (11th Cir. 2021) ("[T]he knowledge-of-status element requires proof that at the time he possessed the firearm he was aware he had a prior conviction for a crime punishable by imprisonment for a term exceeding one year.") (quotation marks omitted); *United States v. Innocent*, 977 F.3d 1077, 1082 (11th Cir. 2020) ("The Supreme Court clarified in *Rehaif v. United States* that

a defendant must know both that he possesses a firearm and that he has been convicted of a crime punishable by imprisonment for more than a year to violate section 922(g)(1)."); *see also United States v. Johnson*, 981 F.3d 1171 (11th Cir. 2020) (holding that a defendant convicted of possessing a firearm as a domestic misdemeanant needed to know only that he had been convicted of a misdemeanor and he must have known the facts that made the crime qualify as a misdemeanor crime of domestic violence, not that he needed to know that his status as a domestic misdemeanant precluded him from possessing a firearm).

In sum, either prior precedent forecloses or the record contradicts Coleman's *Rehaif* arguments.  *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("[W]e are bound to follow a prior binding precedent unless and until it is overruled by this court *en banc* or by the Supreme Court.") (quotation marks omitted).  We affirm.

## V.

Finally, Coleman contends that § 922(g)(1) is unconstitutional as applied to convicted felons, in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).

We review this argument for plain error because Coleman raised it for the first time on appeal.  *See United States v. Vereen*, 920 F.3d 1300, 1312 (11th Cir. 2019) ("Objections not raised in the district court are reviewed only for plain error.").  "When neither this

Court nor the Supreme Court have resolved an issue, there can be no plain error in regard to that issue." *Id.*

Here, Coleman cannot establish any error, plain or otherwise. In *United States v. Rozier*, we held that felons as a class of persons were not qualified to possess a handgun under the Second Amendment. 598 F.3d 768, 771 (11th Cir. 2010) (citing *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008)). Notwithstanding *Rozier*, Coleman maintains *Bruen* changed the relevant inquiry and that § 922(g)(1) fails *Bruen*'s historical-tradition test. But we recently held that *Bruen* did not overrule or abrogate *Rozier*, which remains binding under the prior precedent rule. *United States v. Dubois*, __ F.3d __, No. 22-10829, manuscript op. at 13–14 (11th Cir. Mar. 5, 2024); *see Vega-Castillo*, 540 F.3d at 1236. Accordingly, we reject Coleman's challenge based on the Second Amendment.

## VI.

In sum, the district court properly denied Coleman's motion to suppress, Coleman's challenges to the indictment are contradicted by the record or prior precedent, and § 922(g)(1) is constitutional under our precedent notwithstanding *Bruen*. We therefore affirm Coleman's convictions and sentence.

**AFFIRMED.**