610 F.Supp. 94 (1985)
Oswald Evan PERKINS, et al., Plaintiffs,
v.
Juan Tomás PEÑAGARÍCANO SOLER, et al., Defendants.
Civ. Nos. 84-2274 GG, 85-0138 GG.
United States District Court, D. Puerto Rico,
May 14, 1985.
*95 *96 Oswald Evan Perkins Leverock, Ada F. Perkins, pro se and for other plaintiffs.
C.A. Chavier Stevenson, San Juan, P.R., for defendants.

OPINION AND ORDER
GIERBOLINI, District Judge.
These are actions brought pursuant to Title 42 U.S.C. §§ 1983, 1985 and 1986 alleging certain violations of plaintiffs' due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is invoked under Title 28 U.S.C. § 1343.

I
The present controversy and the underlying factual background are very simple, in spite of the legal verbiage in which they have been clothed. Plaintiff, Oswald E. Perkins and others (Perkins) filed two tort actions in the Superior Court of Puerto Rico, San Juan Part, against several parties and their insurance companies as a result of an automobile accident that produced the death of Perkins' daughter. Those actions were later consolidated.
For the prosecution of one of the actions, Civil Case No. 80-6385, Perkins, himself an attorney, engaged the services of attorney Juan Tomás Peñagarícano, Jr. (Peñagarícano). Due to certain conflicts concerning legal strategy, problems soon developed between Perkins and Peñagarícano which climaxed in the withdrawal of the latter's legal representation. At that time Superior Court Judge Edna Abruña, a co-defendant here, provided in a resolution approving the withdrawal of legal representation, that payment of attorney's fees would be made at the time of adjudication of the case. Almost a year later a settlement was reached with Antilles Insurance Company, a co-defendant in Civil Case No. 83-589. In the judgment approving the stipulation, Superior Court Judge Marcos A. Rodríguez Estrada, also a codefendant here, provided that the settlement funds be consigned in the clerk's office until a complete general release in the benefit of the insurance company was filed and a determination was made regarding Peñagarícano's fees in the companion case, Civil No. 80-6385.
Thereafter, Perkins filed another suit in the Superior Court, San Juan Part, Civil Case No. 84-3365, seeking judgment declaring that Peñagarícano was not entitled to any attorney's fees. Perkins also requested the vacating of the resolution entered by Judge Abruña providing that payment of attorney's fees be made upon adjudication of the case. This request was denied by co-defendant Superior Court Judge William Fred Santiago.
In consolidated cases 80-6385 and 83-589, a hearing for the determination of the amount to be awarded as attorney's fees to Peñagarícano has been scheduled. Pending the hearing, co-defendant Superior Court Judge Luzgarda Vázquez de Santiago ordered that the funds deposited by the insurance company in the clerk's office of the state court be placed in a savings certificate at a banking institution offering the highest interest rates.
Dissatisfied with the determination that Peñagarícano had a right to be awarded attorney's fees in Civil Case No. 80-6385, Perkins has filed the present civil right actions in this court seeking damages against Peñagarícano and all of the superior court judges who had any intervention during the course of those judicial proceedings.[1] *97 Plaintiffs argue, in synthesis, that the defendant judges, separately and in concert with Peñagarícano, conspired to grant him attorney's fees in Civil Case No. 80-6385. It is further alleged that the judicial actions were taken without jurisdiction since in the absence of a written contract between plaintiffs and Peñagarícano for the latter's professional services, the fees should have been the subject of a separate action pursuant to Title 31 L.P. R.A. § 4111. All this was purportedly done with the specific intention of favoring Peñagarícano, who is an "Ad Interin Judge",[2] while discriminating against plaintiffs and depriving them of their property rights without due process.
Noting several jurisdictional deficiencies in plaintiffs' original complaint, we issued an order to show cause why Civil Case No. 84-2274 should not be dismissed. Plaintiffs filed a response and tendered an amended complaint which failed to cure the maladies alluded to in our order. Various defendants have filed motions to dismiss alleging, inter alia, failure to state a claim, judicial immunity and res judicata.

II
Crucial to plaintiffs' cause of action under 42 U.S.C. § 1983 is the intended use of a civil right action to interfere with ongoing state proceedings.

A
The Supreme Court has long acknowledged the competence of state courts to adjudicate federal constitutional claims. Robb v. Connelly, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884). See also, Sumner v. Mata, 449 U.S. 539, 549, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981); Allen v. McCurry, 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980); Swain v. Pressley, 430 U.S. 372, 383, 97 S.Ct. 1224, 1230, 51 L.Ed.2d 411 (1977); and has also established that state courts are the principal expositors of state law. Moore v. Sims, 442 U.S. 415, 429, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979). The seminal case of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) dictated a strong federal policy requiring federal courts to abstain from interfering with pending state criminal proceedings unless the plaintiff could demonstrate bad faith, harassment or any other extraordinary circumstances justifying immediate relief. The Younger rationale is now fully applicable to noncriminal judicial proceedings involving important state interests. Middlesex Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); Moore, supra, 442 U.S. at 423, 99 S.Ct. at 2377; Huffman v. Pursue, Ltd., 420 U.S. 592, 604-605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975), reh. denied, 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975).
To allow federal intervention absent extraordinary circumstances would deprive the state of its legitimate function "of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction." Huffman, supra, 420 U.S. at 609, 95 S.Ct. at 1210. Such interference would also result in duplicative proceedings which could be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. Cf. Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Certainly, to permit plaintiffs to litigate in this court the issues presented by extant state proceedings would, aside from the inherent difficulties of such duplicative actions, militate against interests that the law seeks to protect.
Local trial and appellate courts are empowered to resolve constitutional issues *98 and the mere possibility of an erroneous application of constitutional standards by a local tribunal will not amount, barring other circumstances, to the irreparable injury imperative to justify a disruption of orderly state proceedings. Dombrowski v. Pfister, 380 U.S. 479, 484-485, 85 S.Ct. 1116, 1119-1120, 14 L.Ed.2d 22 (1965). Plaintiffs need only be accorded an adequate opportunity to raise their constitutional claims and there is no indication here that state procedural law precluded the proper presentation and adjudication of their claims. Juidice v. Vail, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977).
Clearly, plaintiffs have available the remedy of appeal to the Supreme Court of Puerto Rico and thereafter may request a writ of certiorari from the United States Supreme Court. Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); 28 U.S.C. § 1258(3). Plaintiffs nevertheless argue that exhaustion of state appellate remedies should not be required because an appeal would be futile. According to plaintiffs, the Supreme Court of Puerto Rico could not afford them justice because its Chief Justice, the Honorable José A. Trías Monge, is a neighbor and friend of defendant Peñagarícano's family, and Justice Antonio S. Negrón García is the brother of attorney Arturo Negrón Garcia, who is married to the sister of Peñagarícano. Notwithstanding, we find that plaintiff's appeal would not be doomed to failure for the reasons mentioned above. Principles of federalism, common courtesy and deference owed to local courts do not allow the evasion of the exhaustion requirement because a losing party in a state court may cogitate his chances of success are slim. Huffman, supra, 420 U.S. at 610, 95 S.Ct. at 1211. Thus, plaintiffs must first exhaust their state appellate remedies before seeking relief in this court, unless they can bring themselves within one of the recognized exceptions.
Even if plaintiffs were in fact appealing a final judgment of a state court, a federal district court lacks authority to review such a judgment since review lies exclusively in the United States Supreme Court. See 28 U.S.C. § 1257 (1982); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983). As was cogently expressed in Atlantic Coast Line R. Co. v. Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970), "lower federal courts possess no power whatever to sit in direct review of state court decisions." Nor can the Civil Rights Act be used as a vehicle to collaterally attack final state court judgments, Bricker v. Crane, 468 F.2d 1228, 1231 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973). A writ of certiorari to the United States Supreme Court is the exclusive method for review of such a decision. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). It should also be stated that the Civil Rights Act was not intended to confer jurisdiction on the federal courts for mere irregularities in state court proceedings. Hurlburt v. Graham, 323 F.2d 723 (6th Cir.1963).
Specifically, plaintiffs claim that the grant of attorney's fees to Peñagarícano, without requiring him to file suit pursuant to 31 L.P.R.A. § 4111, deprived them of their property rights without due process of law. However, it is now well settled in our circuit that merely erroneous applications of state law do not present a question of federal constitutional magnitude when there is an adequate state remedy. Colón-Rivera v. P.R. Dept. of Social Services, 736 F.2d 804, 806 (1st Cir.1984) cert. denied, ___ U.S. ___, 105 S.Ct. 795, 83 L.Ed.2d 788 (1985). See also Cloutier v. Town of Epping, 714 F.2d 1184 (1st Cir. 1983); Chiplin Enterprises v. City of Lebanon, 712 F.2d 1524 (1st Cir.1983). It does not suffice to merely give the state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under Section 1983. Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.1982), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). The violation *99 of a state statute does not automatically give rise to a violation of constitutional rights nor does it necessarily signify that federal rights have been infringed. Crocker v. Hakes, 616 F.2d 237, 239 n.2 (5th Cir.1980) (per curiam); Screws v. United States, 325 U.S. 91, 108-109, 65 S.Ct. 1031, 1038-1039, 89 L.Ed. 1495 (1945).
Even assuming arguendo, that there was an erroneous application of state law, there appears to be adequate state remedies to vindicate plaintiffs' claims without resort to this court. See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

B
In order to constitute a cause of action under 42 U.S.C. § 1983, plaintiffs must demonstrate not only that they were deprived of rights secured by the Constitution, but also that such deprivation was achieved under color of state law. See Werle v. Rhode Island, 755 F.2d 195 (1st Cir.1985); Glaros v. Perse, 628 F.2d 679 (1st Cir. 1980); Ponce v. Basketball Federation, 760 F.2d 375 (1st Cir.1985). The "under color of" state law requirement of Section 1983 is equivalent to the "state action" element of the Fourteenth Amendment, and accordingly Section 1983 is not invoked by purely private conduct. Briley v. California, 564 F.2d 849 (9th Cir.1977); Parish v. National Collegiate Athletic Association, 506 F.2d 1028 (5th Cir.1975). Although it does not require that defendants be officers of the state, they must be willing participants in joint action with the state or its agents. In this respect, the Supreme Court has expressed that "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting `under color' of law for purposes of Section 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). However, it does not follow that resorting to the courts and being on the winning side of a lawsuit would make a party a co-conspirator or a joint actor with the judge. The relationship, connection or nature of cooperation between the state and a private individual must be pled in some detail. This is consonant with the requirement that specific facts in support of the existence of a conspiracy be pled in civil rights actions. McGillicuddy v. Clements, 746 F.2d 76 (1st Cir.1984); Francis-Sobel v. University of Maine, 597 F.2d 15, 17 (1st Cir.1979) cert. denied, 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979); Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir.1977), cert. denied, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). Plaintiff's complaint fails to meet these requirements. The fact that Peñagarícano obtained a favorable determination regarding his entitlement to attorney's fees does not make him a co-conspirator with the judges, and, thus, his conduct was not under color of state law within the meaning of Section 1983. Consequently, plaintiffs have failed to state a claim under Section 1983 as to Peñagarícano.

III
Plaintiffs assert that they are also entitled to relief under Sections 1985(2),[3] 1985(3),[4] and 1986.[5] However, plaintiffs have failed to overcome a formidable barrier to maintain their cause of action under 42 U.S.C. § 1985.
*100 It has been consistently held that a complaint does not state a cause of action under Section 1985 if it fails to allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Creative Environments, supra, at 834-835 (1st Cir.1982); Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.1978) cert. denied, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); Kermit Const. v. Banco Crédito y Ahorro Ponecño, 547 F.2d 1 (1st Cir.1976); Briley v. State of California, 564 F.2d 849 (9th Cir. 1977). The "class" of people allegedly discriminated against, according to plaintiffs in one of their many motions filed, are those who are not judges.
Clearly, these claims are without merit. The requirement that the discrimination in a Section 1985(3) case be class-based is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. Rather, the complaint must allege in detail facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious. Harrison v. Brooks, 519 F.2d 1358, 1360 (1st Cir.1975).
Plaintiffs in the instant case cannot nor do they assert membership in a class with other persons "similarly situated" or that they have been victims of class-based discrimination. In fact, plaintiffs have failed to define any definite class which satisfies the requirement of Section 1985, or to show that the criteria defining the class are invidious. This novel class in which plaintiffs assert membership is neither readily recognizable nor among those traditionally protected by the courts and the law. Bricker, supra, at 1233. Thus, in the absence of any racial or class-based discrimination, plaintiffs' claims under Sections 1985(2) and 1985(3) cannot withstand scrutiny and must be dismissed.
Having dismissed the claim under Section 1985, the sister claim under Section 1986 must also suffer the same fate. Creative Environments, supra, at 834-835.

IV
Finally, we must determine whether the four co-defendants who are state court judges are immune from damages pursuant to the doctrine of judicial immunity.
Since Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1871), the Supreme Court has consistently ruled that judges enjoy absolute immunity from damages under Section 1983 for acts performed in the actual discharge of their judicial functions. See also, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), reh. denied, 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795 (1978); Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 734-735, 100 S.Ct. 1967, 1975-1976, 64 L.Ed.2d 641 (1980).
A crucial determination in our inquiry is whether the judges acted within their jurisdiction. Clearly, a judge cannot be deprived of immunity because the action taken was in error, maliciously done, or was in excess of his authority. He can be subject to liability only when he has acted in the clear absence of all jurisdiction. Stump, supra, 435 U.S. at 357, 98 S.Ct. at 1105.
The Superior Court of Puerto Rico is a court of general jurisdiction and its judges are authorized to consider any issue arising from the cases before them. 4 L.P.R.A. § 121. As such, co-defendant judges may entertain any controversy concerning the payment of attorney's fees in a civil case. Judges are absolutely immune from liability for their judicial acts even if their exercise of authority is tainted by the commission of serious procedural errors. Stump, supra, 359, 98 S.Ct. at 1106.
The record clearly indicates that the challenged actionsthe issuance of resolutions, the granting or denying of motions and the scheduling of hearings to determine the amount of attorney's fees to be awarded *101 are all acts taken by the judges in the proper discharge of their official duties as superior court judges. The acts complained of are all judicial ones. The fact that plaintiffs might disagree with the action taken by the judges does not justify depriving them of their immunity. To so hold would constitute a monumental absurdity since in each and every case tried before a court of law, there is always the possibility that at least one party may not be in agreement with the decision rendered by the judge. Judges need to be totally free to exercise their duties in accordance with their conscience without the fear of retaliation of any kind. Judicial immunity, the fount from which judicial independence emanates, cannot be so easily undermined. We find that defendant judges are absolutely immune from monetary liability under these circumstances.

V
WHEREFORE, in view of the foregoing, defendants' motions to dismiss are granted and it is ordered that the above captioned cases be and are hereby dismissed.
The clerk shall enter judgment accordingly.
SO ORDERED.
NOTES
[1] Although Antilles Insurance Company is included as a defendant, it is only as a nominal party and no allegations have been formulated against it. It appears that Antilles has deposited the sum of $225,000 in the Superior Court of Puerto Rico, San Juan Part, in satisfaction of the settlement reached in Civil Case No. 83-589 filed there by the appearing plaintiffs.
[2] There is no evidence in the record to support the allegation that Peñagarícano is or has even been a judge, a special judge, or an "Ad Interin Judge", whatever this may be.
[3] The relevant part of Section 1985(2) establishes a cause of action against two or more persons who "conspire for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due court of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws ..."
[4] Section 1985(3) provides a cause of action for any person or class of persons injured by a conspiracy organized "for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws ..."
[5] Section 1986 provides that anyone who has knowledge of a conspiracy which would violate Section 1985, has the power to prevent it, and fails to do so, is liable as a conspirator.