Willie James FERGUSON, Plaintiff,

v.

CITY OF MONTGOMERY,
et al., Defendants.

Civil Action No. 95–D–1191–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 18, 1997.

Bevery J. Howard, Edwin L. Yates, Montgomery, AL, for Plaintiff.

J. Bernard Brannan, Jr., Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are Defendants'[1] motion to dismiss filed on October 10, 1995, and their amended motion to dismiss filed on December 20, 1995. The Defendants provided briefs in support of both of their motions to dismiss. Plaintiff Willie James Ferguson ("Ferguson") responded in opposition to the motion to dismiss on November 13, 1995, and responded to the amended motion to dismiss on January 10, 1996. After careful consideration of the arguments of counsel, the case-

---

1. Defendants in this action include Montgomery Police Officers B.J. McCullough and J.W. Mark-ham, the Montgomery Police Chief John Wilson, and the City of Montgomery.

law and the record as a whole, the court finds that the Defendants' motions to dismiss are due to be granted in part.

## I. JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3), and 1367. The parties do not contest personal jurisdiction or venue.

## II. FACTUAL BACKGROUND

Early on the morning of September 10, 1993, Ferguson arrived at the Montgomery, Alabama, Greyhound bus station. Soon after his arrival Ferguson was approached by two City of Montgomery police officers, R.M. Markham ("Markham") and B.J. McCollough ("McCullough"). Officers Markham and McCullough were looking for a black male who was allegedly acting as a "drug mule" by ferrying one kilogram of cocaine from Los Angeles, California, to Troy, Alabama, via the Montgomery bus station. This tip originated with an anonymous telephone call on September 8, 1993, to Sergeant Glynn Martin ("Martin") of the Los Angeles Police Department. The caller told Martin that a black male named Steven Dubose ("Dubose") would be smuggling at least one kilogram of cocaine to Troy, Alabama, and would depart on a Greyhound bus that day. Martin attempted to apprehend the suspect before the bus departed but was unsuccessful. Martin then called Detective Bob Williamson of the Troy Alabama police department and passed along this information as well as a description of Dubose. In a report filed after the incident, McCullough claims that the information described Dubose as a black male weighing 235 pounds, standing six foot three inches tall, and arriving at approximately 4:30 A.M. on September 10, 1993. Ferguson contends that Martin's description of Dubose showed that Dubose weighs 175 pounds and stands only five foot nine inches tall.

Once they approached Ferguson, the officers asked him if he was carrying a weapon. Ferguson responded affirmatively. The officers then frisked him and found a revolver. At this point, Ferguson was taken to an office and allegedly produced several forms of identification along with his bus ticket. Ferguson gave the officers permission to search his bag. The search of the bag failed to reveal any drugs. The officers claim that Ferguson told them at some point during the encounter that he was allowed to carry the revolver because he was a member of the Los Angeles School Police. On the other hand, Ferguson contends that the officers uncovered the badge during their search of the bag and then accused Ferguson of impersonating a peace officer.

Eventually the officers determined that Ferguson was not connected with the transportation of drugs. However, they suspected him of being an escaped Pickens County, Alabama, prisoner. The Pickens County Sheriff subsequently viewed Ferguson and determined that he was not the escaped prisoner. Ferguson was charged with impersonating a peace officer and carrying a pistol without a license. Both charges were later dismissed. Ferguson alleges that the dismissal was due to the State's inability to prove just cause for the officers' search.

Ferguson filed a nine count complaint on September 11, 1995. The complaint contains several federal claims based upon 42 U.S.C. §§ 1983, 1981,[2] and 1986. The § 1983 claims allege that Defendants' actions violated Ferguson's constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[3] Ferguson also alleges that the Defendants committed a variety of state law torts including negligence, false imprisonment, wantonness, civil conspiracy, and outrage.

---

**2.** The court finds no evidence of Ferguson's § 1981 claim in his complaint. Therefore, the court finds that Ferguson has failed to state a § 1981 claim in his complaint and this claim is due to be dismissed.

**3.** In his response to the Defendants' amended motion to dismiss, the Plaintiff requests the court to dismiss his Eighth Amendment claim and to dismiss all fictitious parties. The court finds that such dismissal is proper.

## III. DISCUSSION

*Section 1983 claims: Markham and McCullough* [4]

■ Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes.[5] In Count VIII of his complaint, Ferguson alleges that he is entitled to recovery under 42 U.S.C. § 1983 against Defendants because they allegedly deprived him of his constitutional rights. Specifically, Ferguson alleges that the Defendants violated the tenets of the Fourth Amendment by conducting a search of his person and luggage.

■ Both Markham and McCullough claim they are immune from the Ferguson's Fourth Amendment § 1983 individual capacity claim under the well-established doctrine of qualified immunity. If Ferguson's complaint fails to "state a violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known,'" then the Defendants are "immune from liability and even from trial." *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied, sub nom, Deutcsh v. Oladeinde*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). In this vein, the Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Rich*, 841 F.2d at 1563. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Rich*, 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). If the defendant satisfies this burden, the plaintiff must then show either that the official lacked good faith or that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

■ Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States and the Court of Appeals for the Eleventh Circuit. *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir.1994), and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir.1994); *see also Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir.1996).

■ As emphasized in *Lassiter*, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what de-

---

4. While not discussed by either of the parties, any § 1983 claims against Markham, McCullough, and Wilson in their official capacity are treated as if they were claims against the City of Montgomery. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because the doctrine of respondeat superior does not apply to a municipal entity, Ferguson must show that an official policy or custom caused the alleged constitutional viola-

tions. *See Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir.1994); *Arrington v. Dickerson*, 915 F.Supp. 1503, 1510, 1511 (M.D.Ala.1995). These claims are discussed in a subsequent portion of this opinion and order.

5. The parties do not dispute that the Defendants were acting under color of state law during the activities at issue.

fendant is doing violated federal law in the circumstances." *Id.; see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)(holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The Eleventh Circuit has warned that plaintiffs must not be permitted "to discharge their burden by referring to general rules and to the violation of abstract 'rights.' " Id. at 1150. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir. 1994)).

■ The Supreme Court of the United States has stated, however, that "a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, in following the framework established in *Siegert,* the court must first establish whether the plaintiff has asserted a constitutional violation before delving into the qualified immunity analysis. *See Tinney v. Shores,* 77 F.3d 378, 381 (11th Cir.1996) (citing *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.), *cert. denied,* —— U.S. ——, 116

S.Ct. 379, 133 L.Ed.2d 302 (1995)); *Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994).[6]

■ Ferguson asserts that the state defendants violated his rights under the Fourteenth and Fourth Amendments, as enforced by 42 U.S.C. § 1983. He contends that Markham and McCullough deprived him of his liberty without due process by unlawfully searching his person and falsely arresting him without probable cause for disorderly conduct. Under the Fourth Amendment, persons have the right to be free from unreasonable search and seizure. *See Warren v. Coffee County Comm'n,* 942 F.Supp. 1412 (M.D.Ala.1995). Violation of this right may give rise to a claim for damages pursuant to § 1983. *Id.* Accordingly, the court finds that Ferguson has asserted a violation of a constitutional right.

■ Under the first prong of *Zeigler,* once a plaintiff has alleged a constitutional violation, the government official must demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. "A government official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)(internal

**6.** The court notes that, in this circuit, it may in some instances no longer be necessary to answer this inquiry. In a recent case, the Eleventh Circuit diverged from the *Siegert* order of analysis and stated that "we now think it enough to decide that there was *no clearly established* constitutional right allegedly violated by the defendants." *Spivey v. Elliott,* 41 F.3d 1497, 1498 (11th Cir.1995) (italics added). There, the panel decided *sua sponte* to reexamine if *Siegert, supra,* required it to first determine "whether the violation of a constitutional right had been alleged" or whether it was sufficient to only decide "that there was no 'clearly established' constitutional right alleged." *Id.* at 1498.

The panel stated that, in *Spivey,* further analysis regarding the substantive right alleged would be "expensive" and burdensome to the parties: "Once there has been a determination that there is no 'clearly established' right, the parties can accomplish little in pursuing the question of

whether there is a right at all. The same parties will win and the same parties will lose regardless of the court's decision on that point." *Id.* at 1498–99. The panel further reasoned that:

> [I]n the interest of efficiency and collegiality on this Court, where there are differing views as to the substantive right, this panel has chosen to withdraw all of its prior opinion which relates to whether the complaint alleges a constitutional right so that the opinion will serve as no precedent on that issue.

*Id.* at 1499. In so deciding, however, the panel was careful not to establish precedent: in addition to stating that "[t]hose who differ with the decision … could write it off as dictum," the panel emphasized that its decision in no way precludes a court, if deemed appropriate, from first determining whether a plaintiff has asserted the violation of a constitutional right. *Id.*

quotations and citations omitted)). In the instant case, Markham and McCullough went to the bus station in search of an alleged drug courier. They approached Ferguson based upon a tip passed originally from an anonymous caller to the Los Angeles Police Department. Their business at the bus station was within their discretionary crime fighting functions. This mission involved interpretation of the tip and decisions over when and how to approach their alleged suspect. Clearly, Markam and McCullough were acting within the scope of their discretionary authority.

Under the second prong of the *Zeigler* analysis, Ferguson must demonstrate the government official either lacked good faith or violated clearly established statutory or constitutional law in making this arrest. In his brief in opposition to the motion for summary judgment, Ferguson argues that Markham and McCullough lacked probable cause to search him which invalidated Ferguson's subsequent arrest. Ferguson contends that this lack of probable cause made the search a violation of clearly established constitutional law.[7]

■■■ However, the court disagrees and finds that the search was valid, thereby preserving the validity of the subsequent arrest. "Law enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." *U.S. v. Diaz–Lizaraza*, 981 F.2d 1216, 1220 (11th Cir.1993) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An officer may also conduct a "reasonable search for weapons" for purposes of personal protection where the officer has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. For a "Terry" stop to be within the confines of the Fourth Amendment, it must be based upon "reasonable suspicion." *Diaz–Lizaraza*, 981 F.2d at 1220. The officer must be able to "articulate something more than an 'inchoate

and unparticularized suspicion or hunch' " as the basis for the Terry stop. *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.).

■■■ While an anonymous tip alone cannot provide reasonable suspicion necessary for a Terry stop, additional corroboration of the details of the tip may provide a basis for reasonable suspicion. *See Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). For instance, an anonymous telephone tip informing police officers that an individual would be leaving a certain apartment building at a particular time in a particular make of vehicle in route to a motel in order to make a drug delivery provided the necessary "reasonable suspicion" for a Terry stop based upon the officers' observation of the suspected individual. *Id.* at 325, 110 S.Ct. at 2413–14. The Court noted that even though the officers did not verify every detail of the anonymous tip, the "independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations" made in the tip. *Id.* at 332, 110 S.Ct. at 2417.

■■■ In this action, Officers Markham and McCullough were acting based upon a tip received from another police department. This tip was originally based upon an anonymous phone call quite similar to the phone call in *White*. This tip was relayed from the Los Angeles Police Department through a member of the Troy, Alabama, Police Department to the officers in this action. While the tip did not contain the exact level of detail present in the *White* tip, it did predict future behavior, an important *White* consideration. *See* 496 U.S. at 332, 110 S.Ct. at 2417. Markham and McCollough also compared the alleged physical description received via the tip with Ferguson's appearance prior to their Terry stop. Once the officers saw an individual fitting the tip description arriving at the appropriate bus station at the appropriate time, they converged on Ferguson. The court finds that Markham and McCullough possessed a reasonable sus-

---

7. The court also notes that neither party contests the consensual search of Ferguson's bag.

picion at the time of their stop. Additionally, the court finds that the officers conducted a reasonable weapon search when they asked Ferguson if he was carrying a weapon. *See Diaz–Lizaraza,* 981 F.2d at 1221 ("Drug dealing is known to be extremely violent, and [patting defendant down] was a reasonable way for the agents to protect themselves from a possible concealed weapon.").

Therefore, the court finds that Markham and McCullough's stop and search of Ferguson did not violate clearly established constitutional law and that the officers are entitled to qualified immunity on this claim. Accordingly, the court finds Markam and McCullough are entitled to qualified immunity as a matter of law with regard to Ferguson's § 1983 Fourth Amendment claim and that the portion of Ferguson's § 1983 claim dealing with an improper Fourth Amendment search is due to be dismissed.

Ferguson's other § 1983 claims involve the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. In his complaint, Ferguson asserts that the Defendants' unlawful conduct "deprived Willie James Ferguson of his constitutional right to liberty without due process of law, to equal protection under the law, and to equal privileges and immunities." ¶ 3. Elsewhere in the complaint, Ferguson notes that Defendants violated Ferguson's right to due process by placing him in the "County Jail without affording the opportunity for a hearing." ¶ 20.

■■■■■ The Eleventh Circuit has tightened the pleading requirements in a § 1983 action, stating that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if we are to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde,* 963 F.2d at 1485; *compare Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (stating it is "impossible to square the heightened pleading requirement with the liberal system of notice pleading set up by the Federal rules" and that in § 1983 claims, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious

claims sooner rather than later."). Under the Eleventh Circuit's heightened pleading standard, actions against governmental officials must be pleaded "with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds." *Malone v. Chambers County Bd. of Com'rs,* 875 F.Supp. 773, 791 (M.D.Ala.1994)(Albritton, J.)(quoting *Brown v. Frey,* 889 F.2d 159, 170 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990)). The court finds that Ferguson has not provided enough detail to allow the Defendants to prepare an adequate response to his § 1983 claims involving the Fifth, Sixth, and Fourteenth Amendments. While Ferguson provides some allegations concerning his Fourteenth Amendment § 1983 claim, it is insufficient to allow a meaningful response by the Defendants. For instance, Ferguson could have explained which date a hearing was not afforded and how that deprivation affected his due process rights. The complaint does not provide the Defendants with the slightest idea of pertinent defenses to these § 1983 claims. Therefore, the court finds that Ferguson's remaining § 1983 claims are so vague as to prevent the possibility of a defense response. However, instead of dismissing these claims outright, the court will allow Ferguson ten days from the date of issuance of this order in which to amend his complaint and plead these claims with sufficient specificity. If Ferguson chooses not to amend his complaint, the remainder of his § 1983 claims will be dismissed.

■■■■ In Count IX of his complaint Ferguson alleges that Defendants violated 42 U.S.C. § 1986 when "having knowledge of the wrongful acts conspired to be done to Willie James Ferguson, and having power to prevent or aid in preventing the commission of the same, neglected or refused to take the necessary steps to stop the commission of the wrongful acts." ¶ 42. Section 1986 imposes liability when parties which have knowledge that 42 U.S.C. § 1985 has been or is about to be violated and have the ability to prevent the violation neglect or refuse to stop the

violation and the violation occurs. *See also Davis v. Hudgins,* 896 F.Supp. 561, 571 (E.D.Va.1995), *aff'd,* 87 F.3d 1308 (4th Cir. 1996). Proof of a section 1986 violation depends upon proof of a § 1985 violation. *Id.; Koch v. Mirza,* 869 F.Supp. 1031, 1039 (W.D.N.Y.1994). Courts have consistently held that a complaint fails to state a § 1985 cause of action when the complaint "fails to allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Perkins v. Penagaricano Soler,* 610 F.Supp. 94, 100 (D.C.P.R.1985)(citing *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 834–35 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) (further citations omitted)); *see also Litz v. City of Allentown,* 896 F.Supp. 1401, 1414 (E.D.Pa.1995)(noting that a § 1985 plaintiff must allege that "defendant's actions were motivated by a racial or otherwise class-based invidiously discriminatory animus").

 Ferguson has failed to specifically allege that Defendants committed a § 1985 violation. However, his complaint does contain a count entitled "Civil Conspiracy" which alleges that "Defendants have contrived, combined, federated, conspired, and otherwise acted in concert to accomplish the legal wrongs and unlawful acts complained of herein." ¶ 33. Even though this count might implicate a § 1985 claim, it fails to allege that the conspiracy was racially or otherwise class-based. On this basis alone the complaint fails to state a § 1985 claim.[8] Because the complaint fails to state a § 1985 claim, the § 1986 claim is due to be dismissed. Once again, the court will allow Ferguson ten days to amend his complaint before dismissing the § 1986 claim.

In summary, Ferguson's § 1983 claim against Markham and McCullough based upon a Fourth Amendment violation is due to be dismissed since qualified immunity protects these officers for their alleged violation.

Ferguson's other § 1983 claims against the officers fail to state viable claims and are due to be dismissed if Ferguson does not successfully amend his complaint within ten days of the issuance of this order. Finally, Ferguson's § 1986 claim against the officers is due to be dismissed if Ferguson does not successfully amend his complaint within ten days.

*Section 1983· Claims: John Wilson and the City of Montgomery*

In his response to the Defendants' motion to dismiss, Ferguson concedes that his complaint does not allege a cause of action against John Wilson or the City of Montgomery. He then requests the court to allow him to amend his complaint so that it may properly allege improper behavior against John Wilson and the City of Montgomery. The court grants Ferguson leave to amend his complaint and grants ten days in which to submit his amended complaint.

*State Law Claims: All Defendants*

In light of the current status of this action, the court declines to examine Ferguson's state law claims and the various issues raised by the Defendants' in their motions to dismiss. If Ferguson is able to successfully amend his complaint to properly allege a federal cause of action, then the court will exercise its supplemental jurisdiction and examine these claims. If on the other hand, Ferguson is unable to allege a federal claim, the court will decline to exercise its supplemental jurisdiction and dismiss the state law claims without prejudice to Ferguson's refiling them in a state court.

## IV. CONCLUSION

The court has considered and ruled on Defendants' motion to dismiss and amended motion to dismiss by dismissing portions of Ferguson's claims and allowing him ten days in which to amend his claim to avoid dismissal of his remaining federal claims. The court has not considered Ferguson's state law claims.

8. This finding does not mean that the complaint will state a § 1985 claim if it is amended to allege racial discrimination or some other form of class–based invidious discrimination. If this deficiency is repaired, the court will reexamine this count in light of the remaining § 1985 and § 1986 claim requirements.

Accordingly, it is CONSIDERED and OR-DERED that Defendants' motion to dismiss and amended motion to dismiss be and the same are hereby GRANTED in part. It is further CONSIDERED and ORDERED that Ferguson shall have ten days from the issuance of this order to amend his complaint to allege viable claims as detailed above.